# PAYMENT PROCEDURES

### Fines, Restitution, Special Assessments

➢ <u>ALL</u> payments are to be made at the Clerk of Court at the address below
- <u>NO</u> payments to the U.S. Pretrial Services & Probation Office

➢ Method of payment:
- Cash
  i. Cash payments must be made in person, not by mail, and taken directly to the Clerk's Office at the address listed below
- Personal Check
  i. Payable to: Clerk, U.S. District Court
  ii. Indicate the docket number (written below) and type of payment (fine, restitution, or special assessment)
  iii. Mail or drop off to the address listed below
  iv. You must submit a self-addressed and stamped envelope with your payment if you wish to receive a receipt for your payment
  v. Checks remitted by mail will be destroyed after processing
  vi. Account information is used for electronic (immediate) funds transfer.  If the transfer cannot be processed because of insufficient funds, stop payments, or closed accounts, the Clerk's Office will impose a **$53.00 returned check fee.**
- Money Order/Bank Check
  i. Payable to: Clerk, U.S. District Court
  ii. Indicate the docket number (written below) and type of payment (fine, restitution, or special assessment)
  iii. Mail or drop off to the address listed below
  iv. You must submit a self-addressed and stamped envelope with your payment if you wish to receive a receipt for your payment

**Clerk, U.S. District Court**
**Attn: Intake**
**801 West Superior Avenue**
**Cleveland, OH  44113-1830**

Your Docket Number is: _____

Revised 3/2016



U.S. Department of Justice

*United States Attorney*
*Northern District of Ohio*

United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

February 5, 2019

**<u>VIA U.S. MAIL</u>**

Thomas Greco
866 Seasons Pass Drive
Brunswick Hills, OH 44212

Re: <u>United States of America vs. Thomas Greco</u>
Northern District of Ohio Court Number:  1:09CR506

Dear Mr. Greco:

Enclosed is a Department of Justice Financial Statement.  Please complete each section and provide all requested documentation.  If any part of the Financial Statement is not applicable to you, then please write N/A for that part.  Please sign the last page, and if you are not able to pay the entire amount in full, then please also write in the amount you propose to pay on your debt to the United States.  Your proposed payment will be considered, but it may not necessarily be accepted.  The completed and signed Financial Statement with all requested documentation is due within 17 days of the date of this letter.  A return envelope is included for your convenience.

Very truly yours,

Paul Miller
Financial Litigation Agent
216-622-3646

Enclosure(s): financial statement, self-addressed prepaid envelope



U.S. Department of Justice

*United States Attorney*
*Northern District of Ohio*

United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852
Direct Dial (216) 622-3673
Facsimile (216) 522-4542
E-Mail alex.rokakis@usdoj.gov

March 14, 2017

Thomas J. Greco, Jr.
Reg. No. 32500-160
FCI Morgantown
P.O. Box 1000
Morgantown, WV 26507

Dear Mr. Greco:

I cannot respond to all of your questions in your letter of January 19, 2017, as some require legal interpretation. I cannot provide you legal advice.

Your disability pension was not garnished because of you did not disclose it. Your pension was garnished because of your Amended Judgment, which ordered you to pay $994,734.84 to MetroHealth. I have included a copy of your judgment although you likely already have it. Please see p. 7.

Next, although your financial situation may have changed, the 25% garnishment of your disability pension is reasonable based upon the fact you are incarcerated and *your* day-to-day expenses are reduced. Upon your release from BOP, your financial situation will be reevaluated with your Probation Officer. At that time, the garnishment of your disability pension may or may not continue.

Per your request, I have included a copy of your payment history. However, this history does not include payments made by co-defendants Carroll and Patel.

Very truly yours,

Alex Rokakis
Assistant U.S. Attorney

Enclosures

77

offenses?

Is it just the name that might be in the
newspaper? "MetroHealth official sentenced to," whatever it
is, that gets out, deterrence is achieved? Or do we look a
little deeper into the person himself, what got him involved
in all of this, and take into account along with potential
months or years in jail, take into account what else has
happened and its deterrent effect, if anyone is paying
attention to him beyond some line of type in "The Plain
Dealer"?

It's the demolition of a life. It's the
demolition of a family. It is the utter destruction.

Every penny in his name is going to the
government. They are first in line, as you already heard
today. There will be nothing left. There will be a small
nest egg for his wife. It will be less than $100,000. They
can't even sell their house to satisfy their forfeiture
obligations. There's nothing left. His bank accounts are
down to nothing. He sold — they sold half the furniture in
the house. They've sold one of their two cars.

I think that the deterrence message is clear
because the consequences of violating federal laws such as
this are not simply you might have to go into lockup for a
period of time. There are ramifications well beyond that
that inure badly to not just yourself but your spouse, your

78

children, the wider family of which you're a part.

I think that the message here is that his
missteps, I don't care how you characterize it, that would
let you take some gift cards to try to help a friend, who he
thought was a friend at the time, the destruction, the
destruction that's resulted, it's unimaginable.

Life savings from his wife's — they've got
over the years from his wife's family, all expended, all
gone. Their real estate, all gone. His wife, who will have
to be cared for by her son, she can't work. She's never
held a job in her life. She's an invalid.

There are 110 reasons why anyone who bothers
to pay attention to this case and who understands what he
was and what he is now will be completely deterred
regardless of any length of sentence. Years or months you
decide upon are not what does it. There are people in this
case who are going to come out whole, who will come out
wealthy, who will come out the other end with houses, bank
accounts, pensions, all they need to live out their lives
comfortably.

And one in particular will go back to a
company that's still up and functioning albeit in a
different name.

So I think deterrence, I'm kind of melding
deterrence and another factor here, but the man in this case

79

who will suffer the most, no matter what you do — he
already has financially at least — is Tom Greco.

What more do we need to do? What — now back
to the parsimony clause, what is necessary now at this point
with your order, what is necessary to achieve the purposes
expressed in 3553?

We talked about his year after year of
charitable work. It goes on to this day. He's
been — spends most of his time up at Our Lady of Mt. Carmel
with Father Richard who is in the courtroom here, helping
out with that parish, working around the church up there,
contributing over the Christmas holidays to the downtrodden
and doing a lot of physical work at the church. That's the
kind of person he is. That's the kind of person he is.

The family thing, I'm not going to go into
that further. We've talked about that at length.

Mr. Ricotta's going to talk or pick up on the
nature of the offense and the sentencing disparity issue,
but I wanted to address the latter just briefly.

I recognize that if you look at the case law
on that 3553 factor, in the ideal world you're
looking — you're addressing disparity nationally. You
don't just look at your district or even your circuit. The
goal is to avoid disparity nationally.

So off the goal, I don't know how it gets done

80

in practice, but I know from time to time the pre-sentence
reports, stapled to them is the chart of the circuits
and across the country for different categories of offense.

There are, obviously, hundreds if not
thousands of corruption-type cases all across this country,
and sentences that vary all over the map. John will talk
about that a little bit and he will talk about the idea of
other sentences in this.

But I alluded to and maybe just want to finish
up briefly for this part of our discussion about disparity
just within this case, just within this case. As I said,
indisputably financial ruin.

Sentencing disparity, when I say within this
case, I'm not just talking about Neal Patel and John
Carroll, I'm talking about sentencing disparity with Haresh
Patel, with Raymond Patel, people who haven't even been
charged and I doubt ever will be. They are still in
business, still, if they wish, to bidding on public
contracts. I'm not going to mention any names, but there
were some extensive in chambers discussions about other
employees at Metro.

So what you have is John Carroll, poor man is
going to have to give up 10% of his pension, his PERS
pension. I don't know what other pensions he may have.

Neal Patel has a hefty tab but he has his

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO.  1: 09 cr 00506 |
| | ) | |
| Plaintiff | ) | Judge Kathleen O'Malley |
| | ) | |
| vs. | ) | |
| | ) | |
| Thomas J. Greco, Jr. | ) | **MOTION TO DECLARE** |
| | ) | **DEFENDANT INDIGENT AND** |
| Defendant | ) | **ASSIGNMENT OF CJA PANEL** |
| | ) | |

Now comes the Defendant, Thomas Greco, by and through his counsel John J. Ricotta,

and respectfully requests the court make a determination as to Mr. Greco's indigency.

Mr. Greco is requesting appointment of CJA counsel for his appeal and preparation of the

trial transcript at the government's expense.  The reason are more fully set forth in the

Memorandum attached and incorporated herein.

Respectfully submitted,

/s/John J. Ricotta
JOHN J. RICOTTA
Reg. No. 0000778
1370 Ontario St., Suite 1810
Cleveland, Ohio  44113
(216) 241-0715
(216) 241-9434 - fax
Co-Counsel for Defendant

## MEMORANDUM

On February 11, 2011, this Court sentenced Mr. Greco to 108 months (9 years) incarceration.  Mr. Greco has agreed to $120,000.00 dollars in a forfeiture order.  On February 17, 2011 the parties are returning to Court to determine an additional restitution order.  Mr. Greco's current financials are attached for the Court to review.

In light of the Court's previous orders which included jail, forfeiture and restitution, and the defendant's current financial status, counsel respectfully requests an order finding Mr. Greco indigent and order appointing CJA counsel for his appeal, and an order ordering the trial transcript at government's expense.

Respectfully submitted,

/s/ John J. Ricotta
Co-Counsel for Defendant

02/17/2011  11:15    12162419434                LAW OFFICES                              PAGE  01/01

## RE: Greco, Jr. Thomas J.

**Financial Condition: Ability to Pay**

**176. On February 17, 2010** revisions and update to the following.

**Since June 22nd 2010** have paid Attorney Fee's, Empire Investigation, Cefaratti Documents and other Related Court Expenses.
Roof replaced due to Sale of Academy Home Inspection.
My Son was married and I paid for Wedding Expenses.

## Net Worth

### Assets

| | |
|---|---:|
| Checking Account | 8143 |
| Savings Account | 100 |
| IRA less 10% file fee | 10686 |
| Real Estate 50% Spouse based on | |
| Estimate Sale of Home is still on the Market | $104,550* |
| **Total Assets** | **$123,479** |

### Debts

| | |
|---|---:|
| Forfeiture owed | 120,000 |
| Doctor Bills | 3566 |
| Homeowners Dues | 280 |
| Cost to prepare 2010 Taxes | 350 |
| Utilities | 1321 |
| Court Cost | 1200 |
| Additional Attorney Expenses per John Ricotta | $21,825 |
| Additional Court Expenses. | $25,650 |
| **Total Debt** | **($174,192)** |

**Net Worth**                    **($50,713)**

## Monthly Cash Flow

**Income since 1-9-09**                    **-0-**

Pursuant to the MVRA, an order of restitution may be enforced "by all other available and reasonable means." 18 U.S.C. §3664(m)(1)(A)(ii). Further, the MVRA provides that "If a person obligated to provide restitution, or pay a fine, receives substantial resources from *any source*, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." (Emphasis Added) 18 U.S.C. §3664(n). Defendant is currently incarcerated. The Court concludes that Defendant's back payment from OPERS clearly is clearly a substantial resource that should be applied to his outstanding restitution obligations.

The All Writs Act, therefore, is an available alternative. *United States v. Cunningham*, 2012 WL 2086561, *8. The All Writs Act authorizes this Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). The use of the All Writs Act allows this Court to satisfy the requirement of §3664(n) and its July 26, 2011 restitution Order. Accordingly, OPERS is directed to pay the total $145,812.47 representing the retroactive payments from his disability pension and all monthly payments withheld by OPERS at the time the Government filed its initial motion to modify Defendant's payment schedule.[1]

b.  *Current Payments*

The Government further seeks to garnish 25% of Defendant's future monthly OPERS payments.[2]

Defendant has not raised any specific challenge to this garnishment or provided this Court with any basis to conclude that such an order would be inappropriate. Instead,

---

[1] The Court includes the latter monthly payments based upon the fact that Defendant failed to fulfill his obligation to inform the Government of these payments as required in his Judgment.
[2] The Court interprets the Government's request for future garnishment to begin from the date of its motion for modification, April 2, 2012.

EXHIBIT 6

2/9/11          126

1    that ultimately can be recovered.

2              So the restitution amount in this case is

3    $900,000, less any amount that is recovered through the

4    forfeiture process.  All of it payable to MetroHealth.  That

5    can be payable through the Clerk of Court's.

6              As it relates to this restitution figure,

7    while incarcerated Mr. Greco will pay through the Bureau of

8    Prisons Inmate Responsibility Program 20% of his income

9    earned while incarcerated.

10             Upon release from the custody of the Bureau of

11   Prisons, any restitution balance that remains will have to

12   be satisfied with payments to commence no later than sixty

13   days following release from imprisonment to supervised

14   release, in equal monthly payments of at least a minimum of

15   10% of defendant's gross monthly income during the term of

16   supervised release and thereafter as prescribed by law.

17             Because this restitution order is due and

18   payable immediately, to the extent that there are other

19   assets available, there is nothing in this order that

20   prohibits the United States or MetroHealth from levying upon

21   the property of the defendant, to the extent such property

22   is discovered after the date of this order.

23             With respect to the supervised release, this

24   defendant will comply with all standard conditions that have

25   been adopted by the Court.  The defendant will -- among